UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LIONEL WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | 14 C 9915 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| CITY OF CHICAGO and ANTHONY ROTKVICH, | ) | |
| | ) | |
| Defendants. | ) | |

**M<small>EMORANDUM</small> O<small>PINION AND</small> O<small>RDER</small>**

Chicago police officer Anthony Rotkvich arrested Lionel White for drug offenses, and White spent the next 16 months detained at Cook County Jail before being tried and acquitted of the charges against him. White then filed this suit against Rotkvich and the City of Chicago under 42 U.S.C. § 1983 and Illinois law. Doc. 1. The court dismissed the complaint under Federal Rule of Civil Procedure 12(b)(6), but allowed White to file an amended complaint. Doc. 21. Based on the allegation that Rotkvich's false police reports resulted in White's prosecution and pretrial detention, the amended complaint brings Fourth and Fourteenth Amendment claims against Chicago and Rotkvich and a state law malicious prosecution claim against Chicago. Doc. 22. Defendants move to dismiss the amended complaint under Rule 12(b)(6). Doc. 27. The motion is granted; the federal claims are dismissed with prejudice, while the state law claims are dismissed without prejudice to White refiling them in state court.

**Background**

In considering the motion to dismiss, the court assumes the truth of the amended complaint's factual allegations, though not its legal conclusions. *See Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 639 (7th Cir. 2015). The court must consider "documents

1

attached to the [amended] complaint, documents that are critical to the [amended] complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in White's brief opposing dismissal, so long as those facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013) (internal quotation marks omitted); *see also Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 528 n.8 (7th Cir. 2015). The following facts are set forth as favorably to White as those materials allow. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012). The court does not and could not know at this point whether White's allegations are entirely true, partly true, or entirely false.

On August 11, 2012, more than two years before this suit was filed, Rotkvich arrested White as White walked out the front door of a multi-unit apartment building. Doc. 22 at ¶¶ 5-6. Rotkvich had a warrant to search Apartment 2S, and he and other officers executed the warrant and found "contraband" there. *Id*. at ¶¶ 8, 10(b). Rotkvich had no reason to believe that White was connected with the contraband. *Id*. at ¶ 9. However, in police reports that he prepared, Rotkvich wrote four false statements connecting White with the contraband—first, that White admitted that he sold illegal drugs; second, that White admitted that he was the person named in the search warrant; third, that another person told the officers that White lived in Apartment 2S; and fourth, that the officers found "proof of residence" for White in Apartment 2S, when in fact they found only an envelope addressed to "Whi Lio" in Apartment 1. *Id*. at ¶ 10.

As a result of Rotkvich's reports, White was charged with a criminal offense "related to the contraband purportedly found in Apartment 2S," and he spent the next 16 months in jail awaiting trial. *Id*. at ¶¶ 10, 11. He was acquitted on December 10, 2013. *Id*. at ¶ 11. Exactly

one year later, White filed this suit against Rotkvich and the City of Chicago, alleging that Rotkvich's falsehoods caused his prosecution and pretrial detention.

## Discussion

The amended complaint claims that Chicago and Rotkvich violated the Fourth and Fourteenth Amendments, and that Chicago committed the Illinois tort of malicious prosecution. Doc. 22 at ¶¶ 12-13. White acknowledges that *Llovet v. City of Chicago*, 761 F.3d 759 (7th Cir. 2014), forecloses his Fourth Amendment claim. Doc. 22 at ¶ 12 n.1; Doc. 30 at 1 n.2. After briefing on the present motion concluded, the Supreme Court granted certiorari in *Manuel v. City of Joliet*, No. 14-9496 (U.S.), which will address whether *Llovet* was correctly decided. But unless and until the Supreme Court says otherwise, this court remains bound by *Llovet*, *see Jansen v. Packaging Corp. of Am.*, 123 F.3d 490, 495 (7th Cir. 1997) (en banc) (per curiam), and so the Fourth Amendment claim is dismissed with prejudice.

The Fourteenth Amendment claim is significantly more difficult to resolve. White claims that Rotkvich violated the Due Process Clause by fabricating evidence of his (supposed) guilt. The claim is called a "*Whitlock* claim" because in *Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012), the Seventh Circuit held that "a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of her liberty in some way." *Id*. at 580. Significantly for present purposes, the two plaintiffs in *Whitlock* had been convicted at trial and spent 17 and 21 years in prison before their release. *Id*. at 570; *see also Fields v. Wharrie*, 740 F.3d 1107, 1109, 1113 (7th Cir. 2014) (holding that a plaintiff who alleged that he was convicted and imprisoned on the strength of fabricated evidence stated a *Whitlock* claim). In *Saunders-El v. Rohde*, 778 F.3d 556 (7th Cir. 2015), the Seventh Circuit held that a *Whitlock* claim was unavailable to a plaintiff who had been

3

charged based on (allegedly) fabricated evidence, who was quickly released on bond following his arrest and thus did not suffer pretrial detention, and who ultimately was acquitted; such a plaintiff, the court ruled, could pursue only a state law malicious prosecution claim. *Id*. at 561; *see also Alexander v. McKinney*, 692 F.3d 553, 557 (7th Cir. 2012) (same).

This case presents the question whether a civil plaintiff who (unlike the *Saunders-El* and *Alexander* plaintiffs) did suffer pretrial detention as a result of fabricated evidence, but who (unlike the *Whitlock* and *Fields* plaintiffs) later was acquitted, can bring a *Whitlock* claim, or whether such a plaintiff is limited to bringing a malicious prosecution claim under state law. The principal reason this question is difficult, at least from the perspective of a district judge duty-bound to follow circuit precedent, is that the Seventh Circuit has issued conflicting signals regarding the viability of a *Whitlock* claim under these circumstances. Accordingly, the court will do the best it can with the guidance that the Seventh Circuit and the Supreme Court have made available. Reviewing that guidance requires a return to first principles.

The Due Process Clause prohibits States from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Outside the context of certain government actions altogether prohibited by the substantive component of the Due Process Clause, *see Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (collecting cases), "the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks omitted). That opportunity sometimes may occur after the deprivation

4

of liberty or property. *See id*. at 342-43 (approving a system in which the Social Security Administration may terminate disability payments without a prior hearing, so long as it provides the recipient with a post-termination opportunity to contest the decision); *see also City of Los Angeles v. David*, 538 U.S. 715, 718 (2003) (holding that a hearing is not required within 48 hours of when a city imposes a parking fine); *Ingraham v. Wright*, 430 U.S. 651, 682 (1977) (holding that a hearing is not required before a junior high school imposes corporal punishment on a student); *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 619-20 (1974) (same, where a court issues a writ to sequester a debtor's property). Whether the Due Process Clause requires pre-deprivation process depends on the "the importance of, and harm to, the private interest, the likelihood of interim error, and the governmental interest in a delay." *David*, 538 U.S. at 716.

Two lines of precedent applying these principles are relevant here. The first, sometimes called the *Parratt-Hudson* doctrine, holds that the Due Process Clause generally does not require pre-deprivation process if the deprivation results from the random and unauthorized act of a state officer. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541 (1981). A State cannot possibly ensure hearings before its officers act randomly and without authority, and "the State cannot be required constitutionally to do the impossible by providing predeprivation process." *Zinermon*, 494 U.S. at 129. Accordingly, all the process the victim of such a deprivation is due is an effective post-deprivation state law tort remedy against the offending officer. *See Hudson*, 468 U.S. at 534-35 (holding that a prison guard's intentional destruction of a prisoner's possessions did not give rise to a federal due process claim because state law provided an adequate post-deprivation tort remedy).

Justice Kennedy's concurrence in *Albright v. Oliver*, 510 U.S. 266 (1994), applied the *Parratt-Hudson* doctrine to a suit similar to this one. The plaintiff had been charged with a

5

crime without probable cause; after the charge was dismissed, he brought suit under § 1983 against the police detective who arrested him and caused him to be charged. Citing *Parratt*, Justice Kennedy reasoned that because state law would have allowed the plaintiff to sue the detective for malicious prosecution, the federal due process claim had to be dismissed. *See id*. at 285-86 (Kennedy, J., concurring) ("Given the state remedy and the holding of *Parratt*, there is neither need nor legitimacy to invoke § 1983 in this case.").

The Seventh Circuit concluded in *Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001), that Justice Kennedy's concurrence was the controlling opinion in *Albright*. *Id*. at 751. *Newsome* therefore held, citing the *Parratt-Hudson* doctrine, that "a federal suit for malicious prosecution by state officers is permissible only if the state in which the plaintiff had been prosecuted does not provide an adequate remedy." *Llovet*, 761 F.3d at 760; *see also Julian v. Hanna*, 732 F.3d 842, 846 (7th Cir. 2013) (holding that a federal due process malicious prosecution claim against an Indiana police officer *could* proceed because Indiana law did *not* provide an adequate post-deprivation tort law remedy); *Newsome*, 256 F.3d at 750-51. This result obtains regardless of whether the plaintiff describes his claim using the term "malicious prosecution"; what matters is whether the claim "in essence" complains of conduct that amounts to malicious prosecution under state law. *Brooks v. City of Chicago*, 564 F.3d 830, 833 (7th Cir. 2009) (internal quotation marks omitted); *cf. Runnion*, 786 F.3d at 517-18 (rejecting an argument that the complaint failed to state a claim due to its incorrectly naming the legal theory entitling the plaintiff to relief).

The second line of precedent holds that post-deprivation process is *never* enough if the liberty deprivation results from a criminal conviction. The Due Process Clause's central command is that criminal defendants must receive fair trials. *See Bell v. Wolfish*, 441 U.S. 520,

6

535 (1979) ("[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."). Notwithstanding the *Parratt-Hudson* doctrine, that is true even if the trial is made unfair by the isolated and unauthorized act of a state employee. *See Bracy v. Gramley*, 520 U.S. 899, 905 (1997) (holding that a conviction would violate due process if the judge disfavored the defendant in retaliation for the defendant's refusal to pay a bribe); *Albright*, 510 U.S. at 281 (Kennedy, J., concurring) (noting, before applying the *Parratt-Hudson* doctrine to a claim by a plaintiff who had *not* been convicted, that "[t]he State must, of course, comply with the constitutional requirements of due process before it convicts and sentences a person who has violated the law"); *Brady v. Maryland*, 373 U.S. 83, 86 (1963) (holding that a conviction violated due process because the prosecutor knowingly refused to disclose crucial exculpatory evidence to the defendant); *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (holding that a conviction violated due process because the prosecutor knowingly allowed a government witness to commit perjury). Cases like *Whitlock* and *Fields*, which allow due process evidence fabrication claims by plaintiffs convicted on the strength of fabricated evidence, illustrate this principle.

White, by contrast, was not convicted, and the Seventh Circuit has held that Illinois law provides an adequate malicious prosecution remedy for alleged police misconduct like Rotkvich's. *See Llovet*, 761 F.3d at 760. In Illinois, the elements of malicious prosecution are: "(1) the defendants commenced judicial proceedings, (2) for which there was no probable cause, (3) the proceeding[s] were instituted or continued maliciously, (4) the proceedings were terminated in the plaintiff's favor, and (5) the plaintiff sustained an injury." *Saunders-El*, 778 F.3d at 561. White alleges that Rotkvich lacked probable cause to believe that White committed a crime, but lied in police reports so that he would be charged with a crime and detained before

7

trial. That sounds in malicious prosecution. Indeed, White's claim is materially indistinguishable from the claims brought by the plaintiffs in *Fox v. Hayes*, 600 F.3d 819 (7th Cir. 2010), and *Brooks v. City of Chicago*, *supra*, where the Seventh Circuit unambiguously held, in circumstances where the plaintiff had not been convicted, that the claims sounded in malicious prosecution and thus could not be brought under the Due Process Clause.

The plaintiff in *Fox* suffered pretrial detention upon being charged with murdering his daughter. After DNA testing showed that the plaintiff could not have been the perpetrator, the prosecutor dropped the charges, and the plaintiff was released, the plaintiff sued the investigating officers under § 1983, alleging that they violated federal due process by manufacturing evidence of his guilt. Specifically, the complaint alleged "that the defendants violated [the plaintiff's] due process rights when they 'deliberately fabricated false statements and deliberately obstructed justice, thereby causing the false arrest of [the plaintiff], causing him to be falsely imprisoned [and] prosecuted.'" 600 F.3d at 841 (third alteration in original). Citing *Parratt*, the Seventh Circuit held that the due process claim failed because a state law malicious prosecution tort claim provided an adequate remedy for the defendants' alleged misconduct. *Ibid*.

The plaintiff in *Brooks* was arrested on a warrant and held for five months before being released. 564 F.3d at 831. He brought due process claims against certain police officers, alleging that they caused the warrant to be issued by "submitting false police reports." *Id*. at 833. As in *Fox*, the court held that the due process claim failed because it was, "in essence, one for malicious prosecution," and that it therefore had to be brought under state law. *Ibid*.

Like the plaintiffs in *Fox* and *Brooks*, White was charged on the strength of allegedly fabricated evidence and suffered pretrial detention, but was not convicted. It follows that White's due process evidence fabrication claim cannot be distinguished from the due process

8

claims rejected in *Fox* and *Brooks*. And because this court is duty-bound to adhere to *Fox* and *Brooks*, given that they have not been overruled (more on this later), White's due process claim must fail. As the Seventh Circuit observed, "[t]he Justices have insisted that courts lower in the hierarchy apply their precedents unless overruled, even if they seem incompatible with more recent decisions," and that "only an express overruling relieves an inferior court of the duty to follow decisions on the books." *A Woman's Choice-East Side Women's Clinic v. Newman*, 305 F.3d 684, 687 (7th Cir. 2002). The Seventh Circuit made this observation in the context of its relationship with the Supreme Court, but the same holds of this court's relationship with the Seventh Circuit. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) ("In a hierarchical system, decisions of a superior court are authoritative on inferior courts. Just as the court of appeals must follow decisions of the Supreme Court whether or not we agree with them, so district judges must follow the decisions of this court whether or not they agree.") (citations omitted).

White makes three arguments as to why dismissing his due process evidence fabrication claim is incompatible with prevailing Seventh Circuit precedent. First, he argues that *Whitlock* shows that his claim can proceed notwithstanding *Fox* and *Brooks*. Doc. 30 at 1-2. The defendants in *Whitlock* manufactured evidence that the plaintiffs committed murder, leading to the plaintiffs' conviction and lengthy incarceration. 682 F.3d at 572. After being exonerated in post-conviction proceedings, the plaintiffs sued the defendants under § 1983, alleging that they violated the Due Process Clause by fabricating the evidence that put them away. *Id*. at 573. As noted, the Seventh Circuit allowed the claim to proceed, holding that a state officer "violates due process" if he "manufactures false evidence against a criminal defendant" and "that evidence is later used to deprive the defendant of her liberty in some way." *Id*. at 580.

There is significant tension between *Whitlock* and *Newsome*; in fact, *Whitlock*'s holding directly contradicts *Newsome*'s. As in *Whitlock*, the plaintiff in *Newsome* sued a state officer for violating the Due Process Clause by fabricating evidence that was later used to secure the plaintiff's murder conviction and lengthy imprisonment. 256 F.3d at 748-49. Unlike *Whitlock*, however, *Newsome* held that the claim could not proceed; as noted, the Seventh Circuit ruled that the claim sounded in malicious prosecution and that because Illinois law provided an adequate tort remedy for malicious prosecution, the claim was barred by *Parratt*. *Id*. at 751. It is very difficult, if not impossible, to escape the conclusion that if *Newsome* were decided today, it would have come out differently.

Does that mean that *Whitlock* overruled *Newsome*? *Whitlock* mentioned *Newsome* only once, in passing, and it cited a passage in *Newsome* dealing with a different issue. *See* 682 F.3d at 583-84. Given its treatment (or non-treatment) of *Newsome*, it is debatable whether *Whitlock* technically overruled *Newsome*. As the Seventh Circuit recently cautioned: "That's not how precedent works. In this circuit it takes a circulation to the full court under Circuit Rule 40(e) for one panel to overrule another." *Iqbal v. Patel*, 780 F.3d 728, 729 (7th Cir. 2015) (holding that a later Seventh Circuit decision could not have overruled an earlier decision without so much as citing it). There was no Circuit Rule 40(e) circulation in *Whitlock*. Additionally, since issuing *Whitlock*, the Seventh Circuit repeatedly has reaffirmed *Newsome*'s general principle—although not its application to plaintiffs who had been convicted as a result of fabricated evidence—that evidence fabrication claims sounding in malicious prosecution must be brought under state law whenever state law provides an adequate remedy. *See Howlett v. Hack*, 794 F.3d 721, 727 (7th Cir. 2015) (citing *Newsome* for the proposition that "a claim [for malicious prosecution under § 1983] is not actionable if there is an adequate state-law remedy"); *Saunders-El*, 778 F.3d at

10

560 ("In *Newsome*, we established that the existence of a state law claim for malicious prosecution renders unavailable § 1983 as a vehicle for bringing a federal malicious prosecution claim"; also reaffirming *Fox* and *Brooks*); *Llovet*, 761 F.3d at 760 (citing *Newsome* for the proposition that "a federal suit for malicious prosecution by state officers is permissible only if the state in which the plaintiff had been prosecuted does not provide an adequate remedy"); *Serino v. Hensley*, 735 F.3d 588, 593 (7th Cir. 2013) ("[T]he existence of a malicious prosecution cause of action under state law '*knocks out* any constitutional tort of malicious prosecution, because, when a state-law remedy exists … due process of law is afforded by the opportunity to pursue a claim in state court.'") (quoting *Newsome*, 256 F.3d at 751); *Julian*, 732 F.3d at 846 (rejecting a call to overrule *Newsome*); *Alexander*, 692 F.3d at 557 (citing *Brooks* to reject the plaintiff's "attempt to piece together an amorphous substantive due process claim from the remains of his forgone or otherwise unavailable constitutional and state law claims," explaining that the court saw "no reason to depart from [its] precedent").

But even if *Whitlock* could be read as overruling *Newsome* in the context of evidence fabrication claims brought by plaintiffs who had been convicted, *Whitlock* cannot properly be read as overruling *Fox* or *Brooks*, which it did not mention at all, and which involved evidence fabrication claims by plaintiffs who had not been convicted. That is, while *Whitlock*'s precise holding is incompatible with *Newsome*, given that they considered the same claim brought by plaintiffs in materially identical circumstances, *Whitlock* can co-exist with *Fox* and *Brooks*. Given this, the only correct reading of *Whitlock* is as a narrow correction of *Newsome* rather than as a complete change of course—although *Newsome* is correct to the extent it held that post-deprivation process *generally* is adequate to address malicious deprivations of liberty, it missed the important corollary that post-deprivation process is *not* adequate when the deprivation results

from a criminal conviction. Thus, it remains true that the *Parratt-Hudson* doctrine applies to evidence fabrication claims whenever the plaintiff was not convicted, as demonstrated by *Fox*, *Brooks*, and the cases reaffirming those two decisions after *Whitlock*.

This conclusion may appear difficult to square with the passage in *Whitlock* stating that "a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of her liberty *in some way*." 682 F.3d at 580 (emphasis added). Pretrial detention deprives the civil plaintiff of liberty "in some way," even if there is no conviction. But the fact that a literal reading of this passage is inconsistent with *Fox* and *Brooks* does not mean that *Whitlock* overruled *Fox* and *Brooks*. In addition to that "not [being] how precedent works," *Iqbal*, 780 F.3d at 729, that is not how opinions are properly read.

In *FDIC v. O'Neil*, 809 F.2d 350 (7th Cir. 1987), a party relied on a passage from *Howell v. Continental Credit Corp.*, 655 F.2d 743 (7th Cir. 1981), to support a certain point. The Seventh Circuit acknowledged that the passage from *Howell* supported the party, but rejected its argument just the same: "The fact that this court in *Howell* articulated its result in language broad enough to cover the present case shows only that courts cannot write readable opinions without using general language. Lesson Number One in the study of law is that general language in an opinion must not be ripped from its context to make a rule far broader than the factual circumstances which called forth the language." *O'Neil*, 809 F.2d at 354; *see also Todd v. Collecto, Inc.*, 731 F.3d 734, 738 (7th Cir. 2013) ("In *O'Rourke,* this court addressed only § 1692e, and we also did not consider claims under that provision by plaintiffs who are not consumers. The broad language in the opinion must be understood in that context."). The context of *Whitlock* was a plaintiff who had been convicted, not one who (as in *Fox* and *Brooks*)

had been charged, detained before trial, but not convicted. The broad language of *Whitlock* must be read in its particular context. So, if the defendant fabricated evidence that the plaintiff committed a crime and the plaintiff was convicted as a result, the plaintiff has a viable *Whitlock* claim even if state law provides an adequate tort remedy for malicious prosecution. But if, as in *Fox* and *Brooks*, the plaintiff was acquitted or the charges were dropped before trial, a viable state law malicious prosecution claim is the only process to which the Due Process Clause entitles him.

Second, White argues that *Armstrong v. Daily*, 786 F.3d 529 (7th Cir. 2015), shows that a due process evidence fabrication claim can succeed even if the plaintiff was not convicted. Doc. 30 at 3-7. That is wrong, as *Armstrong* did not even address an evidence fabrication claim. The plaintiff in *Armstrong* was imprisoned for 29 years for sexual assault and murder. His conviction was vacated in 2005, but he remained in custody pending retrial. After the conviction was vacated, state forensics technicians destroyed crucial evidence that could have led to the plaintiff's exoneration. In 2009, a state court responded to the evidence destruction by dismissing the remaining charges, and the plaintiff sued the forensics technicians in federal court. He alleged that they violated federal due process by destroying the evidence, thereby causing him to remain detained longer than he otherwise would have. 786 F.3d at 531-32.

*Armstrong* held that the plaintiff stated a valid due process claim even though he was not convicted, or even tried, as a result of the evidence destruction. The destruction of crucial evidence of a person's innocence prevents all future criminal trials against that person from being fair, so charges against such a person must be dismissed. But if a due process claim based on such misconduct required a criminal conviction, then the dismissal of the criminal case would prevent the victim of the misconduct from recovering for any harm the misconduct caused him.

13

*Armstrong* concluded that, "[u]nder these circumstances, requiring a plaintiff to undergo a second trial and conviction to pursue a civil claim under § 1983 would work an obvious injustice. It would deny victims of the most egregious evidence destruction—for whom dismissal is appropriate because a fair trial is impossible—a civil remedy for their loss of liberty." *Id*. at 553.

*Armstrong*'s reasoning does not apply here. White alleges that Rotkvich fabricated evidence of his guilt, not that he destroyed evidence of his innocence, and he thus makes something closer to a *Brady* claim than a *Whitlock* claim. The difference is not academic. As *Armstrong* explained, destroying exculpatory evidence makes a fair trial impossible; no jury will ever be able to get a full account of the case for the defendant's innocence. Fake evidence of guilt, meanwhile, makes a trial unfair only if it is introduced at trial; as *Armstrong* itself recognized, "an accused has no claim against an officer who fabricates evidence and puts the evidence in a drawer, never to be used." *Armstrong*, 786 F.3d at 553; *see also Whitlock*, 682 F.3d at 582. The bottom line is that *Armstrong* did not concern a due process evidence fabrication claim, let alone under the circumstances presented here, and *Armstrong* thus did not overrule *Fox* and *Brooks*. It follows that this court cannot read *Armstrong* as relieving it of its obligation to adhere to *Fox* and *Brooks*.

Like *Whitlock*, *Armstrong* has language that, if read literally, is difficult to square with *Fox* and *Brooks*: "Though the most common liberty deprivation cases are based on post-trial incarceration after a wrongful conviction, the essential elements of this constitutional claim are more general and not limited to wrongful convictions." 786 F.3d at 551. But as with *Whitlock*'s broad language, this passage from *Armstrong* must be read in the context of a *Brady*-like

14

evidence destruction claim.  Under the principles set forth in *Iqbal* and *O'Neil*, the passage cannot properly be read as overruling *Fox* and *Brooks*.

Third, White relies on *Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000), which holds that a due process evidence fabrication claim may proceed when the plaintiff was detained before trial even if he was subsequently acquitted.  *Id*. at 346, 349; Doc. 30 at 3 n.4.  *Zahrey* is on all fours with this case, but its holding directly contradicts *Fox* and *Brooks*, and this court is bound by the Seventh Circuit, not the Second.  *See United States v. Glaser*, 14 F.3d 1213, 1216 (7th Cir. 1994) ("A district court in Wisconsin must follow [the Seventh Circuit's] decisions, but it owes no more than respectful consideration to the views of other circuits.").

White correctly notes that the Seventh Circuit has cited *Zahrey* approvingly on several occasions.  Doc. 30 at 3 n.4; *see Armstrong*, 786 F.3d at 551; *Saunders-El*, 778 F.3d at 561; *Fields*, 740 F.3d at 1114; *Alexander*, 692 F.3d at 557; *Whitlock*, 682 F.3d at 582.  But none of those cases cite *Zahrey* for the proposition that evidence fabrication resulting in pretrial detention but not conviction amounts to a due process violation notwithstanding the availability of an adequate state law malicious prosecution remedy.  *Fields* cites *Zahrey* for an unrelated proposition about absolute prosecutorial immunity.  740 F.3d at 1114.  *Armstrong* cites *Zahrey* for the proposition that a person has a right not to be deprived "of his liberty without due process of law, as the result of the destruction of evidence by a state actor."  786 F.3d at 551.  And *Saunders-El*, *Alexander*, and *Whitlock* cite *Zahrey* for the propositions that a due process evidence fabrication claim requires a deprivation of liberty and that pretrial detention counts as a deprivation of liberty.  *See Saunders-El*, 778 F.3d at 561; *Alexander*, 692 F.3d at 557; *Whitlock*, 682 F.3d at 582.  But White's due process claim fails not because he was never deprived of

15

liberty—he clearly was—but because the availability of a state law malicious prosecution claim affords him the process he is due.

In the end, *Fox* and *Brooks* are the precedents closest factually to this case and, absent their overruling, they must be faithfully applied to this case. *See A Woman's Choice*, 305 F.3d at 687; *Scheiber v. Dolby Labs., Inc.*, 293 F.3d 1014, 1017 (7th Cir. 2002) (applying a rule clearly established by *Brulotte v. Thys Co.*, 379 U.S. 29 (1964), even though it had "been severely, and … justly, criticized" and undermined by subsequent cases, because it had never been explicitly overruled). In adhering to *Fox* and *Brooks* and holding that White's due process evidence fabrication claim fails because he did not sustain a conviction, the undersigned respectfully and regretfully parts company with his esteemed colleague's decisions in *Sumling v. Village of East Dundee*, 2015 WL 5545294, at *3-4 (N.D. Ill. Sept. 18, 2015), and *Collier v. City of Chicago*, 2015 WL 5081408, at *6-7 (N.D. Ill. Aug. 26, 2015).

**Conclusion**

For the foregoing reasons, White's federal claims are dismissed. Because White has already been given the chance to replead his federal claims, and because his opposition to Defendants' Rule 12(b)(6) motion does not request another opportunity to replead in the event the motion is granted, the dismissal of the federal claims is with prejudice. *See James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396, 400-01 (7th Cir. 2006) (rejecting the plaintiff's argument that the district court erred in dismissing its complaint with prejudice, rather than without prejudice and with leave to amend, where the plaintiff did not request leave to amend).

The only remaining claim—the state law malicious prosecution claim—arises under Illinois law. Section 1367(c)(3) of Title 28 provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if … the district court has

dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining pend[e]nt state claims." *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007). This general rule has three exceptions: "when the [refiling] of the state claims is barred by the statute of limitations; where substantial judicial resources have already been expended on the state claims; and when it is clearly apparent how the state claim is to be decided." *Ibid*.

None of the exceptions apply here. Illinois law gives White one year to refile his state law claim in state court if the applicable limitations period for those claims expired while the case was pending in federal court. *See* 735 ILCS 5/13–217; *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008). Substantial federal judicial resources have not yet been committed to the state law claim. And it is not clearly apparent how the state law claim should be decided. It follows that relinquishing jurisdiction over the state law claim is the appropriate course under § 1367(c)(3). *See RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479-80 (7th Cir. 2012); *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251-53 (7th Cir. 1994). Accordingly, the state law malicious prosecution claim is dismissed without prejudice to its refiling in state court.

February 18, 2016

United States District Judge